DELANEY and another, Appellants, vs. GLOBE SHIPBUILD-
ING COMPANY, Respondent.

*September 21—October 18, 1921.*

*Sales: When title passes: Intention of parties: Steamboat in de-
liverable condition: Risk of loss.*

1. The time when a transfer of title under a sale contract takes
   place depends on the intent of the parties, which may be de-
   termined by the written evidence, or, if the matter is left in
   doubt, by the statements of the parties, subject to the limita-
   tions on the reception of parol evidence, and by the surround-
   ing circumstances.

2. In view of sub. 1, sec. 1684*t*—19, Stats., title to a tug sold un-
   conditionally while afloat in a harbor tied to the seller's dock,
   the tug being in a deliverable condition, passed immediately
   to the buyer, at whose risk it was when afterwards sunk,
   though the seller failed to notify the buyer of the fact that
   it had sunk prior to the time he had made full payment of
   the purchase price.

3. A bill of sale describing defendant as owner and that he had
   bargained and sold, and "by these presents do bargain and
   sell," is regarded as merely formal evidence of the bargain
   which had taken place some time before.

APPEAL from a judgment of the circuit court for Douglas
county: W. R. FOLEY, Circuit Judge. *Affirmed.*

The appeal is from a judgment dismissing the plaintiff's
complaint.

This is an action to recover damages sustained by the
plaintiffs, resulting from the sinking of a tug in Superior
harbor at the defendant's dock and of which the defendant
had been the owner. On February 23, 1920, it was afloat
in Superior harbor, tied to the defendant's dock, and had
been advertised for sale. Negotiations between the plaint-
iff *Delaney* and McKellar, defendant's manager, were car-
ried on at the yard in Superior after an examination by
the plaintiff. The following memorandum was made:

"GLOBE SHIPBUILDING COMPANY.
"Superior, Wisconsin, Feb. 23, 1920.
"Received from *Capt. Delaney* the sum of $10 as part

payment of the steamer Globe, the balance of $2,740 to be paid within thirty days from date.

"JAMES McKELLAR."

Plaintiff then returned to Buffalo, New York, his home, nothing further being done about the possession or delivery. Plaintiff stated that he would be back about April 1st. The next communication was a telegram as follows:

"James M. Kellar,          Buffalo, N. Y., Mar. 17, 1920.
        "*Globe Ship Co.*, Superior, Wis.

"Will mail you Monday Chicago draft for balance due on tug Globe. Any one making inquiry of her value please place her value eighty-five hundred dollars. Kindly keep her equipment oil in tank and close watch of her until I reach there about April seventh.

"Capt. WM. DELANEY."

This telegram was not answered. The next communication was a telegram as follows:

"Buffalo, N. Y., March 23, 1920.
"*Globe Shipbuilding Co.*,
        "Superior, Wis.

"Wiring you Postal Telegraph today eighteen hundred dollars account tug Globe make draft bill of sale attach for balance nine hundred forty dollars through Manufacturers and Traders Bank Buffalo make bill of sale read eighty-five hundred to *Captain William Delaney* James J. Pendergast and Company.          Captain WILLIAM DELANEY."

Defendant received in due course the $1,800 and did not reply.

Owing to the condition of the tug in the ice the water overflowed, and on March 19th the tug began to sink, and sunk on March 22d. On April 2d plaintiff wrote to defendant that the bill of sale and draft had not arrived and also wrote that he had heard rumors that the boat was not in good condition, that her frames were broken and deck beams badly rotted and that the engine was of no account. On April 8th plaintiff paid the final draft in Buffalo. In a letter dated April 9th defendant expressed surprise at the reports of the condition of the tug and stated that the de-

fendant had made no guaranty of the condition of the vessel and that the condition did not enter into the sale, and that they had not been called on to make any statements relative to the boat. The letter also stated that the draft for the balance had not been received. When the defendant made his draft for the balance there was attached to it a bill of sale. This bill of sale was in ordinary form, describing the defendant as sole owner and that defendant had bargained and sold, "and by these presents do bargain and sell," etc. On April 22d plaintiff arrived in Superior. He had had no notice whatever that the boat had sunk. He then requested McKellar to raise the tug. McKellar said he would have nothing to do with it, and said that plaintiff had salvage enough in the boat to pay him. There was evidence that the expense of raising the tug and other items amounted to $1,800. The court submitted but one question to the jury, namely, the question of how much the market value of the tug was decreased by the sinking.

For the appellants there was a brief by *Grace, Fridley & Crawford* of Superior, and oral argument by *W. P. Crawford.*

For the respondent there was a brief by *Hanitch, Hartley, McPherson & Johnson* of Superior, and oral argument by *C. J. Hartley.*

JONES, J. It was alleged in the complaint that it was mutually agreed that the defendant should sell the tug for the sum of $2,750 "and deliver the same upon full payment of the purchase price in the condition in which it was at the date of said agreement and at the defendant's dock, afloat and anchored thereat," and that it was "understood and agreed between the parties that defendant would retain possession of said tug until the full payment of said purchase price was made, and preserve the same from damage or loss, and upon full payment of said purchase price deliver said tug to plaintiffs at the place and in the condition in which said tug was at the time of making said agreement."

There was no evidence of any such agreement, and the case was tried by the plaintiff on the theory that without any such agreement the title and the risk remained in the defendant until the execution of the bill of sale. There was no parol testimony showing the intention of the parties as to the date of the delivery or the time when the title should pass. It is elementary that the time when the transfer of the title takes place depends upon the intent of the parties to the contract. That intention may be determined by the written evidence, and, if the subject is left in doubt, intention may be shown by the statements of the parties, subject to the limitations governing the reception of parol evidence and by the circumstances surrounding the transaction.

Plaintiffs' counsel lay great stress upon the claim made by them that there was no delivery of possession, that no actual possession was given and could not be given, and that this bears upon the question of intention.

Under the conditions existing when the memorandum of sale was made, the following section of the statute is very significant:

"Where there is an unconditional contract to sell specific goods, in a deliverable state, the property in the goods passes to the buyer when the contract is made and it is immaterial whether the time of payment, or the time of delivery, or both, be postponed." Sec. 1684*t*—19.

This was undoubtedly an unconditional contract of sale of specific goods. We see no reason why the tug was not in a deliverable state on the 23d of February, and the fact that it may not have been then practicable to remove the boat to Buffalo seems to us immaterial.

In a very recent case this section of the statute was construed by this court. It was a case perhaps involving more difficulty than the instant case, since the claim was vigorously made that the sale was conditional. In the opinion by Mr. Justice ROSENBERRY it was said:

"Whether or not the title to the goods described in the contract passed to the defendant depends upon the intention

of the parties. Sec. 1684*t*—18, Stats. The contract itself does not in terms say when the title should pass. Recourse must be had, therefore, to rules of construction. Sec. 1684*t*—19 establishes the rules for ascertaining the intention of the parties as to the time at which the property in goods is to pass to the buyer where there is no specific provision in the contract. . . .

"In this case the goods were ascertained and in a deliverable state. The buyer had the right at any time before June 1, 1920, upon payment of the remainder of the purchase price, to take the goods, and if the plaintiff had, upon tender being made to it, refused to deliver the goods, the right of the defendant to recover the same in an action of replevin would have been complete." *Boscobel v. Muscoda Mfg. Co., ante,* p. 62, 183 N. W. 963.

Plaintiffs' counsel argue that it must have been the intention of the parties that further acts were to be performed before the transfer of title should take place—at least that a bill of sale was to be executed; but no mention of a bill of sale was made until more than a month after the bargain was made. It is also contended that the language in the bill of sale in which the defendant is described as owner and the words of bargain and sale afford evidence that the title had not been transferred, but we regard the bill of sale as merely formal evidence of the bargain which had been made on February 23d.

Plaintiffs' counsel argue that, whatever may have been the technical rights of the parties, the defendant was guilty of such concealment and fraud that it should respond in damages. There is no claim that the defendant was in fault for the sinking of the tug. This was the result of natural causes for which neither party was to blame. When the defendant heard of the danger it did what it could to prevent it pursuant to the telegram of March 17th.

In these transactions neither party seemed to be acting from purely altruistic motives. On the one hand the defendant failed to notify the plaintiff of the condition of the tug. On the other hand, plaintiff *Captain Delaney*

requested defendant to place the value of the tug at $8,500 to any one making inquiry, and he caused that amount to be placed in the bill of sale as the consideration although the purchase price was only $2,750. There was testimony that he had told his associates that he had paid $8,500.

The defendant insisted that the tug was at the risk of the plaintiff after February 23d. In view of the statute and the authority above quoted we consider that this claim rested upon solid ground, and it cannot be said that he was guilty of any actionable fraud.

We agree with the trial court that the title passed on February 23d. Defendant's counsel argue that even if this was not true, plaintiff would be prevented from recovering by sub. 2 (b), sec. 1684*t*—8, Stats., because the contract was for the sale of specific goods and indivisible, and that since plaintiff did not elect to rescind and recover the purchase money paid, but took the boat in its damaged condition, he was bound to pay the purchase price. In view of the conclusion we have reached it is not necessary to consider this question.

*By the Court.*—Judgment affirmed.